UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

FAYETTE MIDDLE ANCHOR, LLC,　)
agent of CBL & ASSOCIATES　　)
MANAGEMENT, INC.,　　　　　　)　　　　Civil Case No.
　　　　　　　　　　　　　　　)　　　　5:19-cv-62-JMH
　　　Plaintiff,　　　　　　　)
　　　　　　　　　　　　　　　)　　**MEMORANDUM OPINION**
v.　　　　　　　　　　　　　　)　　　　**AND ORDER**
　　　　　　　　　　　　　　　)
KINNUCAN ENTERPRISES, INC.,　)
　　　　　　　　　　　　　　　)
　　　Defendant.　　　　　　　)

*** 

This matter comes before the Court on Plaintiff Fayette Middle
Anchor, LLC's ("Middle Anchor") Motion for Summary Judgment [DE
11]. Having considered the matter fully, and being otherwise
sufficiently advised, Middle Anchor's Motion for Summary Judgment
[DE 11] will be granted in part, insofar as it pertains to Kinnucan
Enterprises, Inc. ("Kinnucan") breaching the Shopping Center Lease
Agreement ("Lease"), Middle Anchor's request for damages
pertaining to unpaid rent and related charges for rental payments
that have become due, and Middle Anchor's request for attorneys'
fees. However, Middle Anchor's Motion [DE 11] will be denied in
part, insofar as it requests damages for unpaid rental payments
that have yet to become due and costs and expenses related to
Kinnucan's breach. Furthermore, the Court will direct the Parties
to provide further briefing pertaining to the damages in this
matter.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts in this case are undisputed. On November 10, 2015, Kinnucan agreed to lease certain premises in Fayette Mall from Middle Anchor, the landlord, for a period of ten (10) years. [DE 1-1, 2; DE 11-1]. Kinnucan failed to pay rent and the associated late charges and interest under the terms of the Lease for the month of December 2018. [DE 1-1, at 4; DE 11, at 3]. On December 21, 2018, Middle Anchor sent Kinnucan a Notice of Default Non-Payment ("December Notice") [DE 11-3] informing Kinnucan of its failure to pay rent for the month of December 2018. *Id*. On January 8, 2019, Kinnucan abandoned the leased premises. *Id*. On January 10, 2019, Middle Anchor sent Kinnucan another Notice of Default Non-Payment ("January Notice") [DE 11-4] detailing Kinnucan's missed rental payments for both December 2018 and January 2019 and the associated late charges and interest. *Id*. Kinnucan failed to cure its defaults under the Lease. *Id*.

On August 23, 2019, Middle Anchor moved for summary judgment, requesting the Court find Kinnucan breached the lease and award Middle Anchor damages of $3,211,547.43 for rent and $5,967.50 in attorneys' fees and costs associated with this action. [DE 11]. In response, Kinnucan does not dispute that the Lease is a binding enforceable contract or that it breached the Lease. [DE 14]. However, Kinnucan contends that a genuine issue of material fact exists regarding the amount of damages. *Id*.

## II. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corporation of the President of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Stated another way, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Pennington,* 553 F.3d at 450 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).

The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts demonstrating the existence of a genuine issue for trial. Fed. R. Civ. P. 56; *Hall Holding*, 285 F.3d at 424 (citing *Celotex*, 477 U.S. at 324). Moreover, "the nonmoving party must do more than show there is some metaphysical doubt as to the material fact. It must present significant probative evidence in support of its opposition to the motion for summary judgment." *Hall Holding*, 285 F.3d at 424 (internal citations omitted).

The Court "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Pennington v. State Farm Mut. Automobile Ins. Co.,* 553 F.3d 447, 450 (6th Cir. 2009) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). However, the Court is under no duty to "search the entire record to establish that it is bereft of a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). Rather, "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *Id.*

### III. DISCUSSION

Kinnucan does not dispute that it breached the Lease, so the Court will find Middle Anchor is entitled to summary judgment on

this issue without further discussion. On the other hand, the issues involving damages are not so easily determined.

## A. DAMAGES FOR RENT

Instead of solely seeking Kinnucan's missed rental payments and related charges, Middle Anchor also wishes to be compensated for accelerated rent and related charges from the time of the default, December 2018, to the end of the lease term, April 30, 2026. [DE 11, at 6; DE 11-5]. While the Court agrees Middle Anchor is entitled to damages for unpaid rent and related charges, for the reasons stated below, the Court is not persuaded to grant Middle Anchor the full $3,211,547.43 it requests.

In Kentucky, "the measure of damages for breach of contract is 'that sum which will put the injured party into the same position he would have been in had the contract been performed.'" *Hogan v. Long*, 922 S.W.2d 368, 371 (Ky. 1995) (quoting *Perkins Motors, Inc. v. Autotruck Federal Credit Union,* 607 S.W.2d 429, 430 (Ky. Ct. App. 1980)).

Here, Middle Anchor claims it "is entitled to recover [$3,211,547.43], as it will place Middle Anchor in the position in which it would have been had Kinnucan not breached the Lease." [DE 11, at 6]. Kinnucan correctly asserts the Lease requires Middle Anchor to "'use reasonable efforts to relet the Leased Premises . . . ,'" [DE 14, at 2 (emphasis omitted) (quoting [DE 11-1])], and "[t]his is consistent with Kentucky law which requires a landlord

to mitigate damages when a tenant breaches a lease," [DE 14, at 2 (citing *Dulworth v. Hyman*, 246 S.W.2d 993, 996 (Ky. 1952); *Deskins v. Estep*, 314 S.W.3d 300, 305 (Ky. Ct. App. 2010); *Morgan v. Scott*, 291 S.W.3d 622, 640 (Ky. 2009))]; *see also Fifth Third Bank v. Waxman*, 726 F. Supp. 2d 742, 750 (E.D. Ky. 2010) (citing *Smith v. Ward,* 256 S.W.2d 385, 388 (Ky. 1953); *Davis v. Fischer Single Family Homes, Ltd.,* 231 S.W.3d 767, 780 (Ky. Ct. App. 2007) ("Under Kentucky law, non-breaching parties are required to take reasonable efforts to mitigate their damages.")). "[I]t is well established that the 'duty to mitigate is not absolute; recovery is diminished only to the extent that the plaintiff fails to mitigate the damages as they would be mitigated by an ordinary, reasonable person under similar circumstances.'" *Waxman*, 726 F. Supp. 2d at 750-51 (quoting *Morgan,* 291 S.W.3d at 641 n.49). "It is well-settled that the party claiming a failure to mitigate has the burden of proof on that issue." *Alliant Tax Credit Fund 31-A, Ltd. V. Murphy*, 494 F. App'x 561, 572-73 (6th Cir. 2012) (citing *Waxman*, 726 F. Supp. 2d at 751).

In the present case, Middle Anchor insists, "Despite its diligent efforts to do so, Middle Anchor has been unable to successfully locate a new tenant for the Premises, and therefore, is not receiving any rental payments." [DE 11, at 6]. Kinnucan contends, "Whether Middle Anchor has used 'reasonable efforts' to relet the premises, and thereby mitigated its damages, is a

question of fact, not law." [DE 14, at 3 (citing *Nohr v. Hall's Rentals, LLC*, No. 2011-CA-000646-MR, 2013 WL 462004 (Ky. Ct. App. Feb. 8, 2013))]. While the question of whether a plaintiff has used reasonable efforts to mitigate their damages can, and often does, present factual issues, Kinnucan has failed to satisfy its burden of proof by presenting evidence of reasonable efforts Middle Anchor should have used to mitigate its damages. *See Waxman*, 726 F. Supp. 2d at 751 (finding that since the defendants failed to present evidence of reasonable efforts the plaintiff should have taken to mitigate damages, a jury could not reasonably determine the plaintiff failed to use reasonable efforts to mitigate); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986) ("[T]he [nonmoving party] must present affirmative evidence in order to defeat a properly supported motion for summary judgment.").

Instead of presenting evidence of Middle Anchor's alleged failure to use reasonable efforts to mitigate its damages, Kinnucan asserts, "Testimony from factual witnesses and expert real estate agents on the leasing opportunities for the premises, the anticipated period of time for re-leasing the premises and the expected rent amount to be received are all factual issues that need to be presented and resolved . . . ." [DE 14, at 3]. Not only has Kinnucan failed to present any evidence to support this conclusory statement, Kinnucan did not respond to Middle Anchor's

Interrogatory No. 9 asking Kinnucan to describe the factual basis for its assertion that Middle Anchor failed to mitigate its damages. [DE 15, at 4 n.3 (citing [DE 15-1, at 10])]. Also, when the Parties submitted their March 27, 2019 Joint Rule 26 Report [DE 8], they stated that they did not "anticipate that the use of experts will be necessary in this case." [DE 8, at 3]. A conclusory statement, such as Kinnucan's assertion, without some supporting evidence, cannot create a genuine issue of material fact sufficient to defeat summary judgment. *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009) (citing *Lewis v. Philip Morris Inc.,* 355 F.3d 515, 533 (6th Cir. 2004); *Doren v. Battle Creek Health System,* 187 F.3d 595, 598–599 (6th Cir. 1999) ("Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment.")).

Although Middle Anchor is entitled to summary judgment on damages for rent, and Middle Anchor's alleged failure to use reasonable efforts to mitigate does not create a genuine issue of material fact, Middle Anchor is not entitled to the $3,211,547.43 it seeks. Since Kinnucan failed to support its mitigation of damages argument with facts, the Court will grant Middle Anchor's Motion for Summary Judgment [DE 11], insofar as it pertains to Middle Anchor's request for damages for unpaid rent from the time of default in December 2018 to the date of this order. However, as Kinnucan correctly asserts, "Middle Anchor is seeking not only

past due rent and related charges, but also accelerated rent and related charges through the remainder of the lease term which does not end until April 30, 2026." [DE 14, at 2]. In relevant part, Section 11.2 of the Lease states the following:

> The exercise by Landlord of any right granted in this Section shall not relieve Tenant from the obligation to make all rental payments, and to fulfill all other covenants required by this Lease, at the time and in the manner provided herein, and, if Landlord so desires, all current and that portion of future rent and other monetary obligations due hereunder which exceeds the fair market value of such rent and charges shall become immediately due and payable. Tenant throughout the remaining Term hereof shall pay Landlord, no later than the last day of each month during the Term, the then current excess, if any, of the sum of the unpaid rentals and costs to Landlord resulting from such default by Tenant over the proceeds, if any, received by Landlord from such reletting, if any, but landlord shall have no liability to account to Tenant.

[DE 11-1, at 17].

In *Nohr*, a case that is similar to that which is presently before this Court, the Court of Appeals of Kentucky found that in the event of default by non-payment of rent, a lease allowed recovery of future rental payments as they accrued under the terms of the lease by providing, "[T]he Lessor may . . . declare the said term ended and enter into possession of said premises and sue for and recover all rent and damages accrued or accruing under this lease or arising out of any violation thereof . . . ." 2013 WL 462004, at *2-4 (emphasis omitted). However, citing the Court of Appeals of Kentucky's decision in *Jordan v. Nickell*, 253 S.W.2d

237 (Ky. 1952) regarding the doctrine of anticipatory breach, the *Nohr* Court found that the lessor was entitled to recover rental payments only as they became due. *Nohr*, 2013 WL 462004, at *4.

In *Jordan*, the Court of Appeals of Kentucky, acknowledging "the doctrine of anticipatory is recognized in Kentucky" and "may be applied to rental as well as other contracts," found that the doctrine does not "justify[] the acceleration of payments under a contract where the due dates of such payments are definitely fixed by the contract." 253 S.W.2d at 239 (citing *Paducah Cooperage Co. v. Arkansas Stave Co.*, 237 S.W. 412 (Ky. 1922); *Fidelity and Deposit Company of Maryland v. Brown*, 20 S.W.2d 284 (Ky. 1929); 51 C.J.S., *Landlord and Tenant*, § 250, p. 883).

Like the lessor in *Nohr*, Middle Anchor is entitled to damages for unpaid rent and related charges, but it is only entitled to such damages as the rental payments become due and Kinnucan fails to pay them. Middle Anchor cannot recover for rental payments that have yet to become due because the alleged harm to Middle Anchor has yet to occur. Moreover, at some point between now and the end of the lease term, April 30, 2026, Middle Anchor may find a new tenant for the leased premises, so it is possible that Middle Anchor will not, in fact, be continuously harmed by Kinnucan's default throughout the entirety of the lease term. Therefore, the Court will grant in part Middle Anchor's Motion for Summary Judgment [DE 11], insofar as it pertains to Middle Anchor's request

for damages pertaining to unpaid rent and related charges for rental payments that have become due. However, Middle Anchor's Motion for Summary Judgment [DE 11] will be denied in part, insofar as it requests damages for unpaid rental payments that have yet to become due.

The Court will direct Middle Anchor to file a status report, with an attached invoice, or other form of accounting for the Leased Premises, showing the amount of unpaid rent and related charges for rental payments that have become due. If Middle Anchor has mitigated damages by reletting the Leased Premises to another tenant since Kinnucan's October 11, 2019 Sur-Reply [DE 18], that should be accounted for in the proposed damages amount. Middle Anchor need not account for reletting that occurred prior to Kinnucan's Sur-Reply [DE 18], Kinnucan's last opportunity to object to Middle Anchor's Motion [DE 11], because Kinnucan failed to argue what reasonable efforts Middle Anchor could have used to mitigate damages. Kinnucan will have an opportunity to respond to Middle Anchor's status report.

### B. DAMAGES FOR ATTORNEYS' FEES

In Middle Anchor's Motion for Summary Judgment [DE 11], Middle Anchor argues that due to Kinnucan's breaches and defaults, Middle Anchor is entitled to reasonable attorneys' fees in the amount of $5,967.50. [DE 11, at 6]. Section 11.5 of the Lease states the following:

> If at any time Tenant shall be in default hereunder, and if Landlord shall deem it necessary to engage attorneys to enforce Landlord's rights hereunder, the determination of such necessity to be in the sole discretion of Landlord, Tenant will reimburse Landlord for court costs, reasonable attorney's fees (in both the trial court and appellate courts) and all other <u>actual, out-of-pocket</u> reasonable expenses.

[DE 11-1, at 18]. Since there is no dispute that Kinnucan is in default, the Lease clearly states Middle Anchor is entitled to attorneys' fees and costs associated with this action. *Id.*

In addition to Middle Anchor's argument regarding its alleged entitlement to attorneys' fees, Middle Anchor asserts that after the Court enters this opinion, it can submit a final attorneys' fees amount. [DE 11, at 6 n.21].[1] Also, Middle Anchor offers to "provide more detailed attorneys' fees records, an affidavit of reasonable, or any additional information the Court may require." *Id.*

Kinnucan contends that Middle Anchor's assertion that it will submit a final attorneys' fees amount after the Court's decision and offer to provide more information regarding the requested attorneys' fees suggests Middle Anchor anticipates additional proceedings are needed to determine the reasonableness of Middle Anchor's requested attorneys' fees. [DE 14, at 2]. Kinnucan further contends that Middle Anchor's redacted billing records [DE 11-6]

---

[1] Footnote 21 in Middle Anchor's Motion [DE 11] mistakenly references Kinnucan's attorneys' fees, but Middle Anchor is clearly referring to its own attorneys' fees.

are inadequate and further evidence of the reasonableness of Middle Anchor's attorneys' fees is needed. [DE 18, at 2]. In reply, Middle Anchor clarifies it was not anticipating additional proceedings and "was simply reserving the right to provide the Court with updated documentation in the event that Kinnucan responded to the Motion and caused Middle Anchor to incur additional fees." [DE 15, at 6].

"'The primary concern in an attorney fee case is that the fee awarded be reasonable, that is, one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers.'" *Miller v. Davis,* 267 F. Supp. 3d 961, 994 (E.D. Ky. July 21, 2017) (citing *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000)). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "The party seeking attorneys' fees bears the burden of documenting his entitlement to the award." *Reed v. Rhodes*, 179 F.3d 453, 472 (6th Cir. 1999). "The fee applicant 'should submit evidence supporting the hours worked and rates claimed.'" *Id.* (quoting *Hensley*, 461 U.S. at 433). "Th[e] Court has broad discretion in awarding attorneys' fees under a valid contractual authorization for an award of such fees." *Herdguard, LLC v. NXT Generation Pet, Inc.*, No. 5:16-cv-468-JMH-EBA, 2019 WL 3082458, at *2 (E.D. Ky. July 15,

2019) (citing *Graceland Fruit, Inc. v. KIC Chems., Inc.*, 320 F. App'x 323, 328 n.6 (6th Cir. 2008)). "[T]he Court is required to 'provide a concise but clear explanation of its reasons for' awarding a certain amount of fees." *Davis,* 267 F. Supp. 3d at 995 (quoting *Hensley*, 461 U.S. at 437). Therefore, the Court will address the reasonableness of both the hourly rates and the hours expended.

### 1. REASONABLE HOURLY RATE

"A trial court, in calculating the 'reasonable hourly rate' component of the lodestar computation, should initially assess the 'prevailing market rate in the relevant community.'" *Adcock-Ladd*, 227 F.3d at 350. "To determine a reasonable hourly rate, courts use as a guideline the prevailing market rate, which is defined as 'the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record.'" *Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 715 (6th Cir. 2016) (quoting *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004)). "Therefore, 'the appropriate rate is . . . the market rate in the venue sufficient to encourage competent lawyers in the relevant community to undertake legal representation.'" *Davis,* 267 F. Supp. 3d at 995 (quoting *Husted*, 831 F.3d at 715-16). "A district court may look to 'a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests.'" *Id.*

(quoting *Van Horn v. Nationwide Prop. & Cas. Ins.*, 436 F. App'x. 496, 499 (6th Cir. 2011)). "Furthermore, while the district court may take into consideration an attorney's skill level in identifying the market rate, [the Sixth] Circuit holds that 'reasonable' fees need not be 'liberal' fees . . . ." *Husted*, 831 F.3d at 716 (quoting *Coulter v. Tennessee*, 805 F.2d 146, 149 (6th Cir. 1986), *abrogated on other grounds by Husted*, 831 F.3d at 725).

In the present case, the updated billing records [DE 15-2] submitted by Middle Anchor include entries showing who performed the work in this matter. According to both the updated billing records [DE 15-2] and Middle Anchor's Reply [DE 15, at 6 n.10], attorneys Emma R. Wolfe and Logan J. Mayfield and paralegal Angela W. Coates handled this matter. What the updated billing records [DE 15-2] and Middle Anchor's Motion [DE 11] and Reply [DE 15] fail to provide is the specific hourly rates for Wolfe, Mayfield, and Coates. By reviewing the updated billing records [DE 15-2], the Court can calculate the hourly rates of each attorney and paralegal, but those calculations raise more questions.

According to the updated billing records [DE 15-2], the rates are as follows: $260.00 per hour for Wolfe, $220.00 per hour for Mayfield, and $215.00 per hour for Coates. Middle Anchor provides no description of attorneys Wolfe and Mayfield's level of skill and experience, so the Court is unable to determine the rate an attorney with comparable skill and experience can reasonably

expect to demand. In addition to providing insufficient information about Middle Anchor's counsel, Middle Anchor has neither submitted any affidavits or proof about the prevailing rates for attorneys in this community nor cited to any analogous cases where similar attorneys' fees were awarded. As a result, the Court must look to fee awards in similar cases in the Eastern District of Kentucky.

In *Herdguard, LLC,* a breach of contract case, this Court determined a blended $250.00 hourly rate was reasonable, where the Court found that a $300.00 hourly rate would be reasonable for an experienced trial attorney, a $175.00 hourly rate would be appropriate for associates, and the Court could not conclusively determine how many hours were spent by each attorney. 2019 WL 3082458, at *6. Also, in *Herdguard, LLC*, this Court compared the hourly rates for attorneys in the Eastern District of Kentucky and found as follows:

> In similar types of litigation, courts in the Eastern District of Kentucky have awarded rates of $300 per hour for experienced attorneys and between $150 and $180 per hour for associates. *See, e.g.*, *Doe v. Kentucky, ex rel. Tilley*, No. 3:15-cv-014-GFVT-EBA, 2018 WL 1629108 at *1 (E.D. Ky. Apr. 4, 2018) (granting $300 per hour to an experienced attorney in an action brought under 42 U.S.C. § 1983); *Laney v. Getty*, No. 5:12-cv-306-DCR, 2014 WL 5167528, at *3 (E.D. Ky. Oct. 14, 2014) (awarding $300 rate for experienced attorney and $180 rate for less-experienced associate); *Am. Canoe Ass'n v. City of Louisa*, 683 F. Supp. 2d 480, 488 (E.D. Ky. 2010) (finding $300 rate for partner-level work, $150 rate for associate-level work, and $75 rate for paralegal work appropriate).

*Id.* While the experience of attorneys Wolfe and Mayfield is unclear, their respective rates of $260.00 and $220.00 are not unreasonable based on the prevailing market rate in this district.

However, Middle Anchor is also asking the Court to award fees that include hours completed by Coates, a paralegal, at an hourly rate that is only $5.00 less than Mayfield, an attorney, without providing proof that such a rate for a paralegal is reasonable within this community. The Court is unable to find any Eastern District of Kentucky case where a paralegal rate of $215.00 was found to be reasonable.

In *Am. Canoe Ass'n*, an action brought under the Clean Water Act, the Court found a $75.00 hourly rate for paralegals was reasonable. 683 F. Supp. 2d at 488. In *Dublin Eye Associates, P.C. v. Massachusetts Mut. Life Ins. Co.*, a complex commercial litigation case, the Court awarded paralegals an hourly rate of $110.00. No. 5:11-cv-DCR-EBA, 2015 WL 226046, at *3 (E.D. Ky. Jan. 16, 2015). In *Elliott v. Metropolitan Life Ins. Co.*, an ERISA action, the Court determined a $95.00 hourly rate for a paralegal was reasonable. No. 04-cv-174-DLB, 2007 WL 4192001, at *5 (E.D. Ky. Nov. 13, 2007). In *McKinney v. Astrue*, the Court found $85.00 was a reasonable hourly rate for an experienced paralegal. No. 08-cv-309-GWU, 2009 WL 1956457, at *3 (E.D. Ky. July 8, 2009) (citing *K.L. v. Scott County Schools,* Lexington Civ. Action No. 070-62-

JMH, 2007 WL 1875663 (E.D. Ky. June 28, 2007)). Most recently, the Honorable Danny C. Reeves awarded an hourly rate of $117.27 for a paralegal in a copyright infringement case. *Broadcast Music, Inc. v. Lockhart*, No. 5:18-cv-215-DCR, 2019 WL 1560873, at *2 (E.D. Ky. Apr. 10, 2019). Considering the hourly rates previously awarded to paralegals in the Eastern District of Kentucky and the relative simplicity of this breach of contract case, where the breach of the Lease was undisputed, the Court finds an hourly rate of $100.00 for Coates's hours claimed is reasonable.

### 2. REASONABLY EXPENDED HOURS

"In calculating a fee applicant's lodestar, a district court should exclude hours that were not 'reasonably expended' by counsel." *Ohio Right to Life Soc'y, Inc. v. Ohio Elections Comm'n*, 590 F. App'x. 597, 602 (6th Cir. 2014) (quoting *Hensley*, 461 U.S. at 434). The prevailing party "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.* "[D]ocumentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 533 (6th Cir. 2008); *see also United Slate,*

*Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307 v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 n.2 (6th Cir. 1984). "There is no precise rule or formula for making these determinations." *Hensley*, 461 U.S. at 436. "The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award." *Id.* at 436–37.

"'Purely clerical or secretarial' tasks are not compensable." *Davis,* 267 F. Supp. 3d at 996 (quoting *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989)). "Clerical work involves tasks that do not require legal knowledge, such as filing motions, preparing or reviewing summons, and receiving and filing correspondence." *Davis,* 267 F. Supp. 3d at 996 (citing *Lay v. Astrue*, No. 5:10-cv-346-DLB, 2012 WL 5988822, at * 5 (E.D. Ky. Nov. 29, 2012) (citing *B & G Mining, Inc. v. Office of Workers' Comp. Programs*, 522 F.3d 657, 666 (6th Cir. 2008) ("While reviewing correspondence can constitute legal work, receiving and filing correspondence presumably constitutes clerical work."))). Additionally, "'Block billing involves identifying more than one task in a single billing entry.'" *Davis,* 267 F. Supp. 3d at 997 (quoting *Gibson v. Scott*, No. 2:12-cv-1128-GCS, 2014 WL 661716, at *4 (S.D. Ohio Feb. 19, 2014)). "'Block billing is not *per se* improper; it 'can be sufficient' if the description of the work performed is adequate.'" *Davis,* 267 F. Supp. 3d at 997 (quoting *Husted*, 831 F.3d at 705 n.7). However, the use of block billing in entries that contain

clerical work render it impossible for the Court to determine the exact amount of non-compensable time included in the requested hours. *Davis,* 267 F. Supp. 3d at 997.

Here, Kinnucan is correct that Middle Anchor's initial redacted billing records [DE 11-6] insufficiently demonstrate the reasonableness of Middle Anchor's attorneys' fees. Specifically, due to the extensive redactions, the billing records [DE 11-6] fail to provide sufficient detail for the Court to determine the hours were reasonably expended. In reply to Kinnucan's Response [DE 14], Middle Anchor submitted updated billing records [DE 15-2] that provide enough detail for the Court to determine the reasonableness of Middle Anchor's attorneys' fees and only contain redactions for work-product and privileged information. [DE 15, at 6 n.10].

Middle Anchor's updated billing records [DE 15-2] show Wolfe, Mayfield, and Coates worked a collective 47.5 hours. However, many of the fees requested by Middle Anchor are not compensable because they include billing for clerical tasks. Also, many of Middle Anchor's billing entries that involve clerical tasks can be characterized as "block billing." Entries that include either wholly clerical tasks or block billing that was not adequately described enough to determine the percentage of the included non-clerical and clerical tasks include the following: Coates electronically filing the Complaint [DE 1-1] and summonses, [DE

15-2, at 2 (Jan. 22, 2019 Entry)]; Coates docketing the deadline for Kinnucan to file an answer, *Id.* (Feb. 5, 2019 Entry); Coates docketing the deadlines for the Parties to meet and report, *Id.* at 3 (Mar. 1, 2019 Entry); Coates electronically filing the Joint Rule 26 Report [DE 8] and Corporate Disclosure Statement [DE 7] and docketing the deadline to file the Joint Rule 26 Report [DE 8], [DE 15-2, at 4 (Mar. 27, 2019 Entries)]; Coates docketing the deadlines found in the Scheduling Order [DE 9], [DE 15-2, at 4 (Apr. 8, 2019 Entry)]; Coates docketing the deadline for Kinnucan's discovery responses, *Id.* at 5 (June 10, 2019 Entry); Coates electronically filing the Motion for Summary Judgment [DE 11] and docketing the deadline for Kinnucan's response, [DE 15-2, at 6 (Aug. 23, 2019 Entry)]; Coates docketing the Proposed Agreed Order for Extension of Time [DE 12], [DE 15-2, at 6 (Sept. 13, 2019 Entry)]; and Coates docketing the deadline for Middle Anchor's Reply [DE 15], [DE 15-2, at 6 (Sept. 20, 2019 Entry)]. Considering the previously mentioned fee entries that included Coates's non-compensable clerical tasks, the Court will exclude those hours before calculating the lodestar amount.

After reducing the 47.5 hours Wolfe, Mayfield, and Coates worked by the 4.6 hours that included Coates's non-compensable clerical tasks, the amount of reasonably expended hours is 42.9. Of the 42.9 reasonably expended hours, Wolfe worked 5.1 hours, Mayfield worked 35.1 hours, and Coates worked 2.7 hours. Wolfe's

5.1 hours multipled by her $260.00 hourly rate equals $1,326.00. Mayfield's 35.1 hours multiplied by his $220.00 hourly rate equals $7,722.00. Coates 2.7 reasonably expended hours multiplied by the reasonable hourly rate of $100.00 equals $270.00. Thus, the lodestar amount is the sum of $1,326.00, $7,722.00, and $270.00, which equals $9,318.00.

### 3. ATTORNEYS' FEES ADJUSTMENT

"The product of reasonable hours times a reasonable rate does not end the inquiry." *Hensley*, 461 U.S. at 434. "After determining the lodestar amount, the court can adjust the fee upward or downward 'to reflect relevant considerations peculiar to the subject litigation.'" *Davis,* 267 F. Supp. 3d at 998 (quoting *Adcock-Ladd*, 227 F.3d at 349). "However, 'a 'strong presumption' favors the prevailing lawyer's entitlement to his lodestar fee.'" *Davis,* 267 F. Supp. 3d at 998 (quoting *Adcock-Ladd*, 227 F.3d at 350). Additionally, "the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988." *Hensley*, 461 U.S. at 440. However, "'[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee,' which will typically 'encompass all hours reasonably expended on the litigation.'" *Davis,* 267 F. Supp. 3d at 999 (quoting *Hensley,* 461 U.S. at 435). Therefore, "modifications to the lodestar are proper only in certain 'rare' and 'exceptional' circumstances, supported

by both 'specific evidence' on the record and detailed findings."
*Adcock–Ladd*, 227 F.3d at 350 (quoting *Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546, 565 (1986)).

In the present case, Middle Anchor's Motion for Summary Judgment [DE 11] will be granted in part, insofar as it pertains to Kinnucan breaching the Lease and Middle Anchor's request for damages pertaining to unpaid rent and related charges for rental payments that have become due. While Middle Anchor's Motion for Summary Judgment [DE 11] will be denied in part, insofar as it requests damages for unpaid rental payments that have yet to become due, Middle Anchor's counsel has obtained an excellent result, and Kinnucan does not argue otherwise. Additionally, there are no "rare" or "exceptional" circumstances that support a reduction of the lodestar amount, so Middle Anchor is entitled to fully compensatory attorneys' fees. *Davis,* 267 F. Supp. 3d at 999 (citing *Adcock–Ladd*, 227 F.3d at 350). Therefore, the undersigned will not reduce the lodestar amount of $9,318.00.

Since the filing of Middle Anchor's Motion for Summary Judgment [DE 11] and Reply [DE 15], Middle Anchor has filed various documents related to the bench trial currently set for January 14, 2020. Both the trial and the final pretrial conference will be cancelled due to the Court granting in part Middle Anchor's Motion for Summary Judgment [DE 11], insofar as it pertains to Kinnucan breaching the Lease. However, under the Lease, Middle Anchor is

entitled to reasonable attorneys' fees, including those following the filing of Middle Anchor's Reply [DE 15], which have yet to be reported to the Court. Therefore, the Court will give Middle Anchor an opportunity to request attorneys' fees for any work performed since the filing of Middle Anchor's Reply [DE 15], and Kinnucan shall have an opportunity to respond.

## C. COSTS

As previously mentioned, in addition to attorneys' fees, Middle Anchor is contractually entitled to recover costs as the prevailing party in this litigation. [DE 11-1, at 18]. However, "[i]t is the responsibility of the prevailing party to document and provide evidence regarding the reasonableness of the costs and expenses for which it is seeking an award." *Ohio Right to Life Soc'y, Inc.*, 590 F. App'x. at 605 (quoting *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 827 (6th Cir. 2013)). Here, Middle Anchor correctly asserts it is entitled to reimbursement for court costs and reasonable expenses, but it fails to describe the alleged costs and expenses or provide any proof of the reasonableness of such costs and expenses. Therefore, the Court is unable to award Middle Anchor any costs and expenses. Accordingly,

**IT IS ORDERED** as follows:

(1) Middle Anchor's Motion for Summary Judgment [DE 11] is **GRANTED IN PART**, insofar as it pertains to Kinnucan breaching the Lease, Middle Anchor's request for damages pertaining to unpaid

rent and related charges for rental payments that have become due, and Middle Anchor's request for attorneys' fees;

(2) Middle Anchor's Motion for Summary Judgment [DE 11] is **DENIED IN PART**, insofar as it requests damages for unpaid rental payments that have yet to become due and costs and expenses related to Kinnucan's breach and default;

(3) Middle Anchor is entitled to damages pertaining to unpaid rent and related charges for rental payments that have become due;

(4) Middle Anchor is entitled to $9,318.00 in reasonable attorneys' fees as the prevailing party in this action;

(5) On or before **MONDAY, DECEMBER 30, 2019,** Middle Anchor **SHALL** file a status report, with an attached invoice, or other form of accounting for the Leased Premises, showing the amount of unpaid rent and related charges for rental payments that have become due. If Middle Anchor has mitigated damages by reletting the Leased Premises to another tenant since Kinnucan's October 11, 2019 Sur-Reply [DE 18], that should be accounted for in the proposed damages amount;

(6) On or before **MONDAY, DECEMBER 30, 2019,** Middle Anchor **MAY** file a motion requesting attorneys' fees for any work performed since the filing of Middle Anchor's Reply [DE 15];

(7) On or before **MONDAY, January 13, 2020,** Kinnucan **MAY** file a response to Middle Anchor's status report and motion requesting attorneys' fees; and

(8) The final pretrial conference set for December 9, 2019, and the bench trial set for January 14, 2020 are **CANCELLED**.

This the 6th day of December, 2019.



Signed By:

_**Joseph M. Hood**_

**Senior U.S. District Judge**